IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DORA LEE DURANT,

        Plaintiff,

v.                                        CIV 20-0834 KBM

KILOLO KIJAKAZI, Acting Commissioner,
Social Security Administration,

        Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and/or Remand (*Doc. 22*) filed on May 12, 2021. Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties have consented to me serving as the presiding judge and entering final judgment. *See Docs. 5*; *10*; *11*. Having considered the record, submissions of counsel, and relevant law, the Court finds Plaintiff's motion is not well-taken and will be denied.

## I.    Procedural History

On November 8, 2016, and December 23, 2016, respectively, Ms. Dora Lee Durant ("Plaintiff") filed applications with the Social Security Administration for Supplemental Security Income under Title XVI of the Social Security Act ("SSA") and for Disability Insurance Benefits under Title II of the SSA. Administrative Record[1] (AR) at

---

[1] Document 19-1 contains the sealed Administrative Record. *See Doc. 19-1.* The Court cites the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

211-21. Plaintiff alleged a disability onset date of September 13, 2016. AR at 211, 218.

Disability Determination Services determined that Plaintiff was not disabled both initially (AR at 72-97) and on reconsideration (AR at 102-33). Plaintiff requested a hearing with an Administrative Law Judge ("ALJ") on the merits of her applications. AR at 152-53.

At a July 12, 2019 hearing before ALJ Cole Gerstner, Plaintiff was represented by counsel, Crystal Flynn. AR at 42-71. Both Plaintiff and a vocational expert testified. *See* AR at 44-71. ALJ Gerstner issued an unfavorable decision on August 20, 2019. AR at 17-34. Plaintiff submitted a Request for Review of Hearing Decision/Order to the Appeals Council (AR at 143), which the Council denied on June 19, 2020 (AR at 1-6). Consequently, the ALJ's decision became the final decision of the Commissioner. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

## II.    Applicable Law and the ALJ's Findings

A claimant seeking disability benefits must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

The claimant has the burden at the first four steps of the process to show: (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically

determinable . . . impairment . . . or a combination of impairments" that has lasted or is

expected to last for at least one year; and (3) her impairment(s) meet or equal one of

the listings in Appendix 1, Subpart P of 20 C.F.R. Pt. 404; or (4) pursuant to the

assessment of her residual functional capacity (RFC), she is unable to perform her past

relevant work. 20 C.F.R §§ 404.1520(a)(4)(i-iv), 416.920(a)(4)(i-iv); *see also Grogan v.*

*Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (citations omitted). "RFC is a

multidimensional description of the work-related abilities [a claimant] retain[s] in spite of

her medical impairments." *Ryan v. Colvin*, Civ. 15-0740 KBM, 2016 WL 8230660, at *2

(D.N.M. Sept. 29, 2016) (citing 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00(B); 20 C.F.R.

§ 404.1545(a)(1)). If the claimant meets "the burden of establishing a prima facie case

of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show

that" Plaintiff retains sufficient RFC "to perform work in the national economy, given

[her] age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citing *Williams v.*

*Bowen*, 844 F.2d 748, 751 & n.2 (10th Cir. 1988)); *see also* 20 C.F.R.

§§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

Here, at Step One of the process,[2] ALJ Gerstner found that Plaintiff "ha[d] not

engaged in substantial gainful activity since September 13, 2016, the alleged onset

date." AR at 20 (citing 20 C.F.R. §§ 404.1571-1576, 416.971-976). At Step Two, the

ALJ concluded that Plaintiff had the following severe impairments: "left knee lipoma,

mild osteoarthritis of the knees, asthma, obesity, depression, and anxiety." AR at 20

(citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). The ALJ also found that Plaintiff had the

---

[2] ALJ Gerstner first found that Plaintiff "me[t] the insured status requirements of the Social
Security Act through December 31, 2021." AR at 20.

following non-severe impairments: back problems, carpal tunnel syndrome, alcohol and drug abuse, and mild, chronic obstructive pulmonary disease. AR at 20. Further, the ALJ found the following impairments to be "non-medically determinable": post-traumatic stress disorder, panic disorder, and fibromyalgia. AR at 21.

At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." AR at 21 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). At Step Four, the ALJ considered the evidence of record and found that Plaintiff:

> [h]as the residual functional capacity to perform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b) except she can lift 20 pounds occasionally and ten frequently, and carry the same. She can sit, stand, and walk six hours each, and push/pull as much as she can lift/carry. She can climb ladders, ropes, and scaffolds occasionally, and balance, stoop, kneel, crouch, and crawl occasionally. Occasional ramps and stairs. She can tolerate dust, odors, fumes, and pulmonary irritants occasionally. The claimant is able to perform simple, routine tasks. Changes in the work setting are limited to simple. She is limited to simple work related decisions. Interactions with supervisors, coworkers, and the public is limited to superficial contacts.

AR at 24. Based on this RFC, ALJ Gerstner found that Plaintiff "is unable to perform any past relevant work." AR at 32 (citing 20 C.F.R. §§ 404.1565, 416.965). Instead, he found that Plaintiff can perform the jobs of assembler, production (DOT 702.687-010); cleaner, housekeeping (DOT 323.687-014); bottling line attendant (DOT 920.687-042); and routing clerk (DOT 222.687-022). AR at 33. He also found that Plaintiff can perform the sedentary jobs of addresser (DOT 209.587-010); tube operator (DOT 239.687-014); leaf tier (DOT 529.687-138); stuffer (DOT 731.685-014); hand bander (DOT 920.687-030); escort vehicle driver (DOT 919.663-022); and table worker (DOT 739.687-182).

Consequently, the ALJ determined that Plaintiff "has not been under a disability within the meaning of the Social Security Act from September 13, 2016, through the date of [his] decision." AR at 18 (citing 20 C.F.R. §§ 404.1520(g), 416.920(g)).

## III.   Legal Standard

The Court must "review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161, 1166 (10th Cir. 2012) (citation omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lax*, 489 F.3d at 1084 (quoting *Hackett*, 395 F.3d at 1172). "It requires more than a scintilla, but less than a preponderance." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). The Court will "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but [it] will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Id.* (quoting *Hackett*, 395 F.3d at 1172 (quotation marks omitted)).

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200). The Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zoltanski*, 372 F.3d at 1200).

IV.     **Discussion**

Plaintiff raises two primary issues in her motion: (1) whether the ALJ erred in analyzing the opinions of two treating sources, Dr. Abernethy and Ms. Thelen; and (2) whether the ALJ erred in analyzing her subjective complaints. *See Doc. 22*. For the reasons that follow, the Court rejects both of Plaintiff's arguments and affirms the ALJ's decision.

### A.     Plaintiff has not demonstrated reversible error in the ALJ's analysis of the opinions of Holly Abernethy, M.D. and Janet Thelen, PMHNP-BC.

The Court begins with the premise that the ALJ must evaluate every medical opinion in the record. *See* 20 C.F.R. §§ 404.1527(c); 416.927(c). Medical opinions are "statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including . . . symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1); 416.927(a)(1). While "[t]he record must demonstrate that the ALJ considered all of the evidence," there is no requirement that the ALJ "discuss every piece of evidence." *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996)). However, "in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton*, 79 F.3d at 1010 (citations omitted). The ALJ must "provide specific, legitimate reasons[] if he decide[s] to discount or dismiss an opinion from an acceptable medical source, and to explain the weight given to opinions from [other medical] sources . . . ." *See Harrold v. Berryhill*, 714 F.

App'x 861, 865 (10th Cir. 2017) (quotation marks and citations omitted). Ultimately, the ALJ must "ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow [his] reasoning, when such opinions may have an effect on the outcome of the case." *Id.* (quotation and citation omitted).

### 1. Opinions of Dr. Abernethy

Plaintiff alleges that ALJ Gerstner erred in his analysis of the opinions of Holly Abernethy, M.D. by failing to provide adequate rationale for rejecting her opinions. *Doc. 22* at 12-17. The ALJ described Dr. Abernethy as Plaintiff's "primary care provider."[3] AR at 25. Pursuant to the so-called "treating physician rule," the ALJ must give a treating physician's opinions controlling weight if those opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] record." *See* 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2); *see also Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). A "treating physician's opinion is given particular weight because of [her] 'unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . ." *Doyal*, 331 F.3d at 762 (quoting 20 C.F.R. § 416.927(d)(2)).

If the ALJ determines that a treating physician's opinion is entitled to less than controlling weight, he must follow two steps. *Noble v. Saul*, No. 20cv0332 KBM, 2021 WL 2255309, at *3 (D.N.M. June 3, 2021). First, he "must find the opinion to be unsupported by medical evidence or inconsistent with substantial evidence in the record." *Id*. (citing

---

[3] The parties agree that because Plaintiff filed her claim before March 27, 2017, the prior regulations set forth in 20 C.F.R. §§ 404.1567 and 416.927 apply to the analysis of the opinions of Dr. Abernethy, a treating physician. *See Docs. 22* at 13; *24* at 3 n.2.

*Padilla v. Colvin*, No. CV 14-0495 CG, 2015 WL 10383109, at *4 (D.N.M. June 29, 2015)). If so, he "will not give opinion controlling weight." *Id*. (citing *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011)). At the second step of his analysis, the ALJ "must determine what deference he will accord the opinion after considering the six deference factors listed" in 20 C.F.R. §§ 404.1527 and 416.927. *See id*. (citing *Padilla*, 2015 WL 10383109, at *4; *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004)). These factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quotation omitted). The ALJ must give good reasons, which are "sufficiently specific to make clear to any subsequent reviewers" for the weight he gives to an opinion. *Langley*, 373 F.3d at 1119 (quotation omitted).

Here, the ALJ devoted eight paragraphs of his decision to discussing Dr. Abernethy's treatment records and opinions. *See* AR at 25-31. Beginning with her October 31, 2016 examination of Plaintiff, the ALJ thoroughly discussed Dr. Abernethy's findings and observations from at least ten different visits. *See id*. The ALJ went on to enumerate Dr. Abernethy's opinions as to Plaintiff's exertional limitations, observing that she limited Plaintiff to sitting for one hour in a workday, standing and/or walking for zero hours in a workday, requiring 20 to 30-minute unscheduled breaks every 30 minutes, only occasionally lifting or carrying less than ten pounds, and grasping, turning, twisting,

manipulating, or reaching "zero percent" of the day. *See* AR at 30-31 (citing AR at 465-66). The ALJ described these limitations as "extreme[,]" "not supported by [her] own treatment notes[,]" and "not consistent with the overall record." AR at 31. Accordingly, he gave the opinions "little weight." AR at 31. In support of his assessment, the ALJ highlighted Dr. Abernethy's own findings that Plaintiff had normal motor strength and tone, normal ambulation, normal breath sounds with good air movement, no dyspnea, normal strength and movement of extremities, and healthy appearance. AR at 31 (citing AR at 361-63, 485-88, 493-97).

The ALJ satisfied the first step of the treating physician analysis when he determined that Dr. Abernethy's opinions were unsupported and inconsistent with the record. But Plaintiff takes issue with his determination, maintaining first that Dr. Abernethy's opinions *are* supported by objective evidence embedded in her own records. Doc. 22 at 15-16. Plaintiff highlights Dr. Abernethy's notations of tender points and muscle spasms, prescriptions for Percocet, Toradol, and a TENS unit, and a statement that Plaintiff had maximized her medications and muscle relaxers. *Id.* at 16. While a review of Dr. Abernethy's treatment notes confirms that Dr. Abernethy assessed chronic pain and prescribed pain relievers, they also reveal Dr. Abernethy's observations that Plaintiff's activities of daily living were "improving[,]" that she was "physically functioning[,]" that her pain was "average[,]" and that pain medication relieved her pain by 75%. *See* AR at 485-91, 499-505. As such, the Court cannot say that the findings and notations to which Plaintiff refers undermine the ALJ's rejection of Dr. Abernethy's opinions. Instead, Plaintiff essentially invites the Court to reweigh the evidence, an invitation the Court must decline. *See Allman v. Colvin*, 813 F.3d 1326,

1333 (10th Cir. 2016) (affirming, even where the record contained some support for an opinion, where the record also contained support for the ALJ's rejection of that opinion).

Plaintiff also insists that there is no "logical bridge" between Dr. Abernethy's finding that Plaintiff was "healthy appearing" and the ALJ's rejection of Dr. Abernethy's opinions. *Doc. 22* at 14. If Dr. Abernethy's notation of a healthy appearance was the only finding cited by the ALJ in his assessment of her opinions, the Court might agree with Plaintiff. Instead, however, the ALJ listed numerous findings from Dr. Abernethy's treatment notes that *together* contradict her opined exertional limitations. That is, a healthy appearance coupled with "normal" motor strength, tone, ambulation, and movement of extremities suggests the ability to stand and walk for some measurable period of time, rather than "zero hours" in a workday. The ALJ's finding that Dr. Abernethy's opinions were contrary to her own treatment notes is a finding supported by substantial evidence and not contrary to law.

Nor can the Court fault the ALJ for his finding that Dr. Abernethy's opinions, which preclude standing and walking entirely and only permit sitting for one hour per workday, were not supported by the record as a whole. In contrast to his rejection of Dr. Abernethy's more restrictive limitations, the ALJ found the opinions of the state agency physicians – that Plaintiff could perform a reduced range of light work with some postural limitations – "consistent with the record." AR at 29-30. Citing in part to treatment notes from Dr. Abernethy, the ALJ explained that the record showed that Plaintiff exhibited a strong, steady gait, normal ambulation, and normal motor strength and tone. AR at 30 (citing AR 356-58 (Dr. Abernethy observes that Plaintiff is "ambulating normally"), 493-97 (PA Schaefer observes "normal tone and motor

strength" and "normal movement of all extremities[,]" and Dr. Abernethy signs off on

encounter), 545-48 (Dr. Thelen observes "strong and steady gait").

The ALJ also detailed the findings by Jonathan Hancock, D.O. as to Plaintiff's

lower extremities. AR at 25. Dr. Hancock made the following findings:

> [h]er bilateral lower extremities had intact sensation. She had full five out of
> five muscle strength. She was able to fully straighten her legs, but did report
> pain. She had full flexion. She had crepitus bilaterally. She had tenderness
> around the bilateral joint lines. X-rays of the bilateral knees showed no
> fracture or osseous malalignment. There was slight maltracking, laterally,
> of the patellas. There was a slight mild to moderate patellofemoral
> osteoarthritis noted. The joint lines were well maintained bilaterally.

AR at 25 (citing AR at 426-32). The ALJ observed that Dr. Hancock treated Plaintiff's

mild to moderate patellofemoral osteoarthritis with prescriptions in September 2016,

including Meloxicam[4] and Voltaren cream[5] and that Plaintiff opted to "wait to consider a

corticosteroid injection." AR at 25 (citing AR at 422-25). The ALJ noted Dr. Hancock's

follow-up report from December 2016, indicating that the Voltaren cream helped

Plaintiff's "bilateral knees substantially." AR at 26 (citing AR at 419-21). A December

2016 MRI of Plaintiff's knee showed a "superficial non-encapsulated lipoma" and "small

joint effusion" but "no demonstrated abnormality of the visualized proximal tibia." AR at

26 (citing AR at 437-38). Critically, the ALJ explained that, despite the osteoarthritis in

Plaintiff's knees, she ambulated and walked normally and exhibited normal motor

---

[4] Meloxicam is an oral, nonsteroidal anti-inflammatory drug (NSAID) used to treat pain, swelling, and stiffness of joints. *Meloxicam*, WebMD, https://www.webmd.com/drugs/2/drug-911/meloxicam-oral/details (last visited Nov. 4, 2021).

[5] Voltaren Gel is a topical medication used to treat osteoarthritis of the knee and joint damage that causes pain and loss of function. *Voltaren Gel*, WebMD, https://www.webmd.com/drugs/2/drug-150270/voltaren-topical/details/list-conditions (last visited Nov. 4, 2021).

strength and tone. *See* AR at 30 (citing AR at 356-58, 493-97, 545-48). Simply, these observations run counter to Dr. Abernethy's opinion that Plaintiff could not stand or walk for *any* portion of the workday.

Dr. Abernethy's severe exertional limitations are also contrary to many of Plaintiff's reported activities. The ALJ outlined Plaintiff's statements and testimony that she prepared daily meals, washed dishes and laundry, swept, cleaned, shopped in stores, and was able to spend weeks moving out of one home into another, performing extensive cleaning of the inside and outside of her new home. *See* AR at 29 (citing AR at 50-53 (Plaintiff testifying at the July 12, 2019 administrative hearing that she cared for her teenage sons and drove them where they needed to go, including school and numerous medical appointments); 301-08 (Plaintiff reporting in her function report that "on a good day" she takes her kids to school, cleans, cooks, washes dishes, does laundry, sweeps, and shops for groceries); 549-52 (Ms. Thelen's July 5, 2018 treatment notes indicating that Plaintiff was "getting up and getting things done[,]" including cleaning the interior and exterior of her new home); 553-56 (Ms. Thelen's June 6, 2018 treatment notes indicating that Plaintiff had been "working moving her furniture and cleaning out her dwelling" for the past two and one half weeks)). As the Commissioner observes, the daily activities reported by Plaintiff necessarily required the use of her hands, fingers, and arms, and, yet, Dr. Abernethy's contradictory and unsupported assessment was that Plaintiff could grasp, turn, manipulate, and reach "zero percent" of the workday. *Doc. 24* at 14.

The ALJ's finding that Dr. Abernethy's opinions were not "consistent with the overall record" is a sound one supported by substantial evidence and not the product of

legal error. Further, the ALJ set forth legitimate reasons for rejecting Dr. Abernethy's opinions.

### 2.  Opinions of Ms. Thelen

Next, Plaintiff alleges that ALJ Gerstner erred in his analysis of the opinions of Janet Thelen, PMHNP-BC. *Doc. 22* at 17-19. Plaintiff faults the ALJ for failing to discuss the factors enumerated in SSR 06-3p and maintains that the ALJ offered only "conclusory" reasons for rejecting Ms. Thelen's opinions. *Id.* at 18.

The ALJ outlined Ms. Thelen's opinions as follows: "moderate to extreme limitations in understanding and memory"; "slight to marked imitations in sustained concentration and persistence"; "slight to marked limitations in social interaction"; "moderate to marked limitations in adaption." AR at 31 (citing AR at 469-72). The ALJ gave Ms. Thelen's opinions "little weight," concluding that marked and extreme limitations were neither supported by Ms. Thelen's own treatment records nor consistent with the overall record. AR at 31.

In support, the ALJ explained that Ms. Thelen's treatment notes reported that Plaintiff was alert, oriented, and interactive; that her speech was within normal limits; and that her "affect was broad and her mood was euthymic." AR at 31 (citing AR at 553-56). Moreover, the ALJ emphasized Ms. Thelen's observations that Plaintiff was pleasant and cooperative, made good eye contact, and had "normal thought flow and normal thought content." AR at 31 (citing AR at 581-87). Finally, the ALJ explained that the "record shows that [Plaintiff] had normal memory, sufficient fund of knowledge, normal insight and judgment, appropriate mood, affect, and behavior, and normal attention span and concentration." AR at 31 (citing AR at 617-23).

Despite this rationale offered by the ALJ, Plaintiff contends that he failed to explain how observations of cooperativeness and good eye contact led him to omit Ms. Thelen's marked limitations in concentration and extreme limitations in understanding and remembering. *Doc. 22* at 18 (citing AR at 31). But the ALJ relied on more than Ms. Thelen's notations about cooperativeness and eye contact. He thoroughly detailed Plaintiff's consistently normal mental status reports, including a normal attention span, memory, and concentration, to support his position that the limitations found by Ms. Thelen were overstated and inconsistent with the record. Elsewhere in his decision, the ALJ also noted Dr. Abernethy's findings of *normal* mood and affect on February 27, 2018, May 24, 2018, and May 13, 2019. AR at 27 (citing AR at 497-500, 503-05), 29 (citing AR at 499-593). The ALJ's findings in this regard constitute legitimate reasons for rejecting Ms. Thelen's more severe mental limitations.

Plaintiff also suggests that it was improper for the ALJ to discount Ms. Thelen's opinions on the basis that she was a non-acceptable source. *Id.* (asserting that the ALJ "found the therapist to be a non-acceptable medical source and therefore limited her to little weight"). The Court's review of the ALJ's decision confirms that the ALJ *observed* that Ms. Thelen was a "non-acceptable medical source" under the applicable regulations. AR at 31 (citing 20 C.F.R. §§ 404.1513(a) & (d); 416.913(a) & (d)). The ALJ did not, however, discount Ms. Thelen's opinion on the basis of her status as a non-acceptable medical source. *See* AR at 31. Rather, he evaluated her opinion in accordance with the applicable regulations. *See* AR at 31 (explaining that Ms. Thelen's statements were evaluated "as those from an 'other source'" under 20 C.F.R. §§ 404.1513(a) & (d); 416.913(a) & (d)).

14

Next, Plaintiff maintains that the ALJ improperly adopted the findings of Sheri Tomak, Psy.D., a state agency consultant, and failed to explain why Dr. Tomak's opinions were entitled to more weight than Ms. Thelen's. *See Doc. 22* at 19. The ALJ outlined the opinions of Dr. Tomak, which included "moderate limitations in understanding, remembering, or applying information, interacting, concentrating, persisting, or maintaining pace, and adapting or management oneself." AR at 30 (citing AR at 112-14, 128-30). The ALJ also observed that Dr. Tomak "further opined that [Plaintiff] retained the capacity to understand, remember, and carry out *simple* instructions, attend and concentrate sufficiently to complete a routine workday, and exercise reasonable judgment." AR at 30 (citing AR at 112-14, 128-30) (emphasis added). Giving these opinions "great weight," the ALJ explained that while Plaintiff was "in treatment for mental health issues" and complained of problems with concentration, memory, angry outbursts, and difficulty getting along with others, her examinations revealed "appropriate mood, affect, and behavior" as well as "normal memory, . . . attention span, and . . . concentration." AR at 30 (citing AR at 611-16 (treatment notes of Maureen Bentley, PMHNP BC)). On the basis of these normal mental status findings, the ALJ tempered Plaintiff's mental RFC, favoring the opinions of Dr. Tomak over the more drastic limitations founds by Ms. Thelen. The Court concludes that the ALJ adequately articulated his analysis and his reasons for rejecting the opinions of Ms. Thelen. Simply put, the ALJ found Dr. Tomak's opinions, not Ms. Thelen's opinions, to be most consistent with the record and with Plaintiff's mental status findings. The Court will not remand on this ground.

**B.     Plaintiff has not demonstrated reversible error in the ALJ's evaluation of her credibility and her allegations of pain.**

Plaintiff maintains that the ALJ failed to adequately consider her statements concerning the limiting effects of her impairments under SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). *Doc. 22* at 20-22. Plaintiff submits that the ALJ's decision is devoid of any analysis of the applicable factors. *Id*. at 20. She concedes that an ALJ need not engage in "a formalistic factor-by-factor recitation of the evidence," but she insists that the ALJ has made "no attempt to link factors to evidence" even though Plaintiff persistently complained of pain and sought treatment. *Id*. (citing *Deherrera v. Comm'r, SSA*, No. 20-1189, 2021 WL 942778, at *3 (10th Cir. Mar. 12, 2021)).

Social Security Regulation 16-3p defines the two-step process an ALJ must follow to evaluate a claimant's symptoms. SSR 16-3p, 2017 WL 5180304. At the first step, the ALJ "consider[s] whether there is an underlying medically determinable physical or mental impairment [] that could reasonably be expected to produce [the] individual's symptoms, such as pain." *Id*. at *3. At the second step, after the ALJ has found such an impairment, he "evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit [the] individual's ability to perform work-related activities . . . ." *Id*. When conducting step-two of his evaluation, the ALJ considers:

> the record evidence, the claimant's statements, medical and non-medical source statements, and the non-exhaustive list of factors in 20 C.F.R. § [404].1529(c)(3), which include:
>
> 1.  Daily activities;
> 2.  The location, duration, frequency, and intensity of pain or other symptoms;
> 3.  Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Ramirez v. Berryhill*, No. CIV 17-0781 KBM, 2018 WL 4915830, at *8 (D.N.M. Oct. 10, 2018) (quoting SSR 16-3p, 2017 WL 5180304, at *7-8). Under these guidelines, ALJ Gerstner discussed the following:

"Daily activities": ALJ Gerstner acknowledged Plaintiff's statements that on her "good days" she was able to sit for ten to twenty minutes. AR at 24. He also recounted her allegations that on her "bad days" she could sit for only five to ten minutes at a time and walk half a block before needing to stop due to pain. AR at 56. The ALJ observed Plaintiff's reports that on bad days she had problems handling personal care and relied on her children to help with the cooking and cleaning. AR at 29. In contrast, though, he highlighted Plaintiff's statements in her function report that

> [s]he was able to care for her children. They did not drive and she took them where they needed to go. She was able to prepare meals daily, do dishes, wash laundry, sweep, and clean. She was able to shop in stores and pay bills, count change, handle a savings account, and use a checkbook or money order. [She] was able to spend weeks moving items out of her house and into a new home. She was able to clean the inside and outside of her new home.

AR at 29 (citing AR at 301-08) (internal citations omitted).

"Location, duration, frequency, and intensity of pain and other symptoms": The ALJ discussed Plaintiff's statements regarding her pain. *See, e.g.*, AR at 24. Specifically, he noted her reports of radiating back pain, which he determined

17

was nonsevere (AR at 20), her bilateral knee pain (AR at 25), and tenderness near her left tibia from a soft tissue fluctuant mass (AR at 26). With respect to back pain, the ALJ indicated that although Plaintiff had testified that her "back pain stopped her from working," an MRI of her lumbar spine "showed only mild degenerative changes in the lower lumbar spine and no evidence of neural impingement." AR at 20 (citing AR at 633).

The ALJ mentioned that on February 27, 2018, Dr. Abernethy prescribed Toradol[6] for Plaintiff's "chronic pain." AR at 27 (citing AR at 503-06). He also noted that on June 6, 2018, Plaintiff reported being "sore and in pain" from spending two and a half weeks moving her stuff from one home to another. AR at 27 (citing AR at 553-56). The ALJ discussed Plaintiff's allegations that her pain and knee impairments affected her ability to "lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs . . . , [and] use her hands." AR at 24. But, again, he noted that she also reported being able to care for her children, cook, clean, shop, and transport her children to school and to medical appointments. AR at 24-25. The ALJ remarked that "examinations showed that [Plaintiff] was healthy appearing[,] . . . had normal motor strength and tone and normal movement of all extremities." AR at 31 (citing AR at 493-97); *see also* AR at 20 (citing AR at 487) (indicating that Plaintiff had normal motor strength, equal strength in her bilateral lower extremities, normal movement of all extremities).

---

[6] Toradol is a strong, nonsteroidal, anti-inflammatory drug (NSAID). *Toradol*, Drugs.com, https://www.drugs.com/toradol.html (last visited Nov. 4, 2021). It is typically used in the short-term (5 days or less), by injection or as a tablet, to treat moderate to severe pain. *Id*. Dr. Abernethy's treatment notes indicate that in this instance Toradol was administered as an injection. *See* AR at 505.

While Plaintiff alleged disability on the basis of fibromyalgia, the ALJ explained that fibromyalgia could not be considered a medically determinable impairment, as the record did not "include evidence of at least 11 positive tender points on physical examination or of repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions." AR at 21.

"Type, dosage, effectiveness, and side effects of any medication": The ALJ observed that Dr. Hancock prescribed Meloxicam on August 2, 2016, following X-rays of Plaintiff's knees that showed "slight mild to moderate patellofemoral osteoarthritis." AR at 25 (citing AR at 426-32). He noted that, a month later, Dr. Hancock "continued" Plaintiff on Meloxicam and Voltaren cream and indicated that "[s]he would wait to consider a corticosteroid injection." AR at 25 (citing AR at 422-25). The ALJ highlighted Plaintiff's November 2016 report that the "Voltaren cream had helped her bilateral knees substantially[,]" and noted that Dr. Hancock instructed her to continue using both the Voltaren and Meloxicam. AR at 26 (citing AR at 419-21). According to the ALJ, Dr. Abernethy gave Toradol to Plaintiff for her "chronic pain" on February 27, 2018. AR at 27 (citing AR at 503-06).

The ALJ also discussed various other medications prescribed and taken by Plaintiff as part of her psychiatric treatment, including Abilify (AR at 25 (citing AR at 361-63)), Fluoxetine (AR at 26 (citing AR 451-53)), Depakote (AR at 26 (citing AR at 448-51)), Wellbutrin (AR at 27 (citing AR at 553-56)), Risperdal, Lamotrigine, Lexapro, Vistaril (AR at 28 (citing AR at 520-27)), Seroquel (AR at 28 (citing AR at 485-88)), and Hydroxyzine (AR at 29 (citing AR at 617-23)). The

ALJ indicated that in November 2018, Dr. Abernethy attributed Plaintiff's forgetfulness to "polypharmacy," noting that Plaintiff "had extensive amounts of psychiatric medications[] and needed to have this simplified." AR at 28 (citing AR at 488-91).

"Treatment other than medication" and "Any measures other than treatment an individual uses or has used to relieve pain or other symptoms": The ALJ observed that Plaintiff had not undergone back surgery, as an MRI revealed only mild degenerative changes in her lower lumbar spine and no evidence of neural impingement. AR at 20 (citing AR at 42-71, 633). He acknowledged that she had, however, undergone a "right carpal tunnel release." AR at 20 (citing AR at 435). With respect to Plaintiff's knee impairments, the ALJ discussed Plaintiff's September 2016 statement to Dr. Hancock that "[s]he would wait to consider a corticosteroid injection" in her knees. AR at 25 (citing AR at 422-25).

In assessing Plaintiff's subjective complaints as a whole, the ALJ explained that she "described daily activities that [were] not limited to the extent one would expect given the complaints of disabling symptoms and limitations." AR at 25. He reasoned that "[t]his indicates that [Plaintiff's] statements regarding the symptoms and limitations are not consistent with or supported by the evidence." AR at 25. But the ALJ did not rely on Plaintiff's reported daily activities alone in assessing the credibility of her subjective complaints. He also thoroughly discussed the medical evidence and, only "after careful consideration of [that] evidence[,]" concluded that Plaintiff's statements were unsupported by the record. *See* AR at 29. Most notably, the ALJ's summary of Plaintiffs medical

records indicates that in contrast to her subjective complaints of disabling pain, her examinations showed normal motor strength and tone and normal movement of all extremities. *See* AR at 31 (citing AR at 493-97); *see also* AR at 20 (citing AR at 487) (indicating that Plaintiff had normal motor strength, equal strength in her bilateral lower extremities, normal movement of all extremities).

Ultimately, the Court is satisfied that the ALJ adequately evaluated Plaintiff's statements pursuant to SSR 16-3p and summarized the record in light of those statements. The Court may not reweigh the record evidence; instead, it may only review the ALJ's "decision to ensure that [he] applied the correct legal standard and that [his] findings are supported by substantial evidence." *Kayser v. Berryhill*, No. 16-cv-0978 SMV, 2017 WL 4857442, at *4 (D.N.M. Oct. 25, 2017) (citing *Clifton*, 79 F.3d at 1009). The Court concludes that the ALJ's findings regarding Plaintiff's subjective complaints of her symptoms are supported by and linked to substantial evidence in the record. *See id.* All of the ALJ's findings in this regard are supported by substantial evidence, as is his ultimate decision that Plaintiff's subjective complaints are inconsistent with the evidence of record. The Court will deny Plaintiff's motion as to her final claim of error.

## V.     Conclusion

For all of the reasons above, Plaintiff has failed to demonstrate that the ALJ's findings were not supported by substantial evidence or that he failed to apply the correct legal standards.

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Reverse and/or Remand (*Doc. 22*) is denied. A final order pursuant to Rule 58 of the Federal Rules of Civil Procedure will be enter concurrently herewith.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent